# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2417-18T2

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

T.B.,

      Defendant-Appellant.

_____

        Submitted March 4, 2020 — Decided March 19, 2020

        Before Judges Whipple, Gooden Brown, and Mawla.

        On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 16-08-2261.

        Joseph E. Krakora, Public Defender, attorney for appellant (Ruth Ann Harrigan, Designated Counsel, on the briefs).

        Theodore N. Stephens II, Acting Essex County Prosecutor, attorney for respondent (Hannah Faye Kurt, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant T.B.[1] appeals from a September 5, 2018 order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm for the reasons expressed in the thorough and well-written opinion of Judge Richard T. Sules.

In May 2016, defendant assaulted his then-girlfriend[2] N.P., in her apartment during an argument. He repeatedly punched and kicked her. He slammed her head against a wall and burned her face and body with a hot iron. The victim fled her apartment to a nearby gas station and was taken to the hospital. There, she detailed the assault for police and medical personnel, and pictures were taken of her injuries. Her medical records described her as "awake, alert, [and] oriented to person, place, [and] time." Three days after the assault, the victim signed a written sworn statement for the police in which she explained the incident arose from defendant's jealous belief that she was looking at other men. The victim's father had a key to her apartment and granted police access to retrieve the iron used in the assault.

---

[1] We use defendant's and the victim's initials to protect the victim's privacy. R. 1:38-3(c)(12).

[2] After the incident, N.P. married defendant.

A-2417-18T2

In July 2016, the State presented its evidence to the grand jury, including testimony from the officer and a detective who responded and conducted the investigation, photographs of the victim's injuries, her statement to police, and a police report. The victim appeared before the grand jury but declined to testify against defendant. She stated no one forced or pressured her not to testify, but claimed she was threatened her children may be taken away if she refused to testify. When the prosecutor asked her "is that why you don't want to proceed today?" she responded "I don't want to proceed because I choose not to proceed. That's it."

Based on the evidence presented, the grand jury indicted defendant on second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1) (count one); third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(2) (count two); third-degree aggravated criminal sexual contact, N.J.S.A. 2C:14-3(a) (count three); third-degree criminal restraint, N.J.S.A. 2C:13-2(a) (count four); fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-4(d) (count five); and third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d) (count six). In February 2017, defendant pled guilty to counts one, three, and six and was subsequently sentenced in April 2017.

A-2417-18T2

In September 2017, defendant filed his PCR petition. He argued his convictions should be vacated because the State intimidated the victim to proceed with false allegations against him and the indictment should be dismissed as a result of prosecutorial misconduct. Defendant submitted a September 2017 affidavit and a May 2018 certified letter from the victim in which she claimed she was "sedated and heavily medicated in the hospital from pain medication, alcohol and drug intoxication" during police questioning. She certified when she was released from the hospital, she attempted to recant her statements but the prosecutor "threatened [her] with . . . having [her] children taken by [the Division of Youth and Family Services[3]] if [she] didn't cooperate with moving forward with the allegations . . . ."

Defendant argued he was entitled to withdraw his plea as a matter of due process because the prosecutor withheld evidence of the victim's intoxication. He argued his trial counsel was ineffective because he failed to file motions to dismiss the indictment, improperly advised defendant to accept the plea, failed to prepare defendant for trial, failed to discuss potential defenses with defendant, and had a conflict of interest. Defendant argued the cumulative effect of the

---

[3] The Division of Youth and Family Services is now known as the Division of Child Protection and Permanency. L. 2012, c. 16, eff. June 29, 2012.

errors prejudiced him and required the court to hold an evidentiary hearing to address his claims.

In an eighteen-page written decision, Judge Sules denied defendant's petition. The judge found no prosecutorial misconduct because

> the victim's certifications were submitted after [defendant] pled guilty and was sentenced. In reviewing the submissions, they amount to nothing more than a reluctance on the part of the [victim] to testify against her husband. Nowhere does [the victim] deny that the incident occurred or that [defendant] was involved. [The victim] merely states that she "did not recall" making the statements and vaguely claims that the statements were "incorrect" and "not factual." However, these general and conclusory assertions are not clearly exculpatory nor do they negate [defendant's] guilt.

> Even if [defendant] had proved prosecutorial misconduct, he fails to show that such misconduct affected the grand jury's fair and impartial decision-making process. The grand jury in this case did not consider [the victim's] testimony because she refused to testify. . . . Indeed, the grand jury indicted [defendant] . . . based upon other sufficient evidence including the testimony of law enforcement and photographs depicting [the victim's] injuries.

The judge found the victim's medical records objectively proved she was not "in a medicated and inebriated state" when she gave police her statement. The judge stated:

The emergency room physician's report notes that . . . [the victim] appeared alert, awake, and in mild distress. Her orientation to person, place, and time was normal and her mentation was normal, lucid, and she was able to follow commands. . . . The nurse's report had similar notes concerning [the victim's] alertness level. . . . While [the victim] was administered pain relief medications . . . the physician's notes reveal that [she] had no adverse reaction to these medications.

Even if [the victim] was in a medicated and inebriated state when [police] interviewed her, [defendant] has failed to show that such a fact directly negates his guilt and is clearly exculpatory. . . . The fact that [the victim] may have been in an altered state of mind during her interview with police does not mean that [defendant] did not assault and burn her with a hot iron. The State presented sufficient evidence even absent [the victim's] recounting of the assault at the hospital to [police.] The police recovered the iron and they took graphic pictures of [the victim's] injuries including her burns, some of which are in the distinctive shape of an iron. [The victim] also gave a sworn and written statement to the police . . . several days after the incident in which she voluntarily recounted the circumstances leading up to the assault, the nature of her injuries, her relationship with [defendant], and that she wanted to obtain a restraining order against [him]. . . . [She] does not allege that she was in a medicated or inebriated state when she gave this statement to the police several days later. Accordingly the State was not required to disclose this evidence to the grand jury because it did not negate [defendant's] guilt and it was not clearly exculpatory.

Judge Sules rejected the argument that plea counsel was ineffective for failing to file a motion to dismiss the indictment because the victim's

6

certifications were received "well after" defendant's guilty plea and sentence. The judge found the victim's retraction was not newly discovered evidence because it was "merely impeaching and contradictory to her original interview that was conducted by a detective. A jury could still find [defendant] guilty based on the other medical evidence and photographs as well as the testimony of law enforcement."

The judge also rejected defendant's argument there was a conflict of interest pursuant to RPC 1.7. The judge found no conflict where defendant was asserting it between defense counsel and a non-client. The judge found no evidence "there was a significant risk that [plea counsel's] representation of [defendant] would have been materially limited by the fact that his secretary is a friend of the victim's family." The judge concluded the relationship between the secretary and the victim's family did not demonstrate a conflict because defendant failed to show that plea counsel had a personal interest in the outcome of his case by virtue of the relationship.

The judge found it was reasonable for plea counsel not to prepare for the trial because the plea was entered months before the trial was scheduled. Moreover, during the plea, defendant advised the court he was satisfied with counsel's advice and did not require more time to consider the plea agreement.

7

The judge concluded there was no basis to withdraw defendant's plea because he "has not asserted a colorable claim of innocence [and instead] makes a bald assertion of his innocence, which is not sufficient without specific and credible facts from the record." Thus, defendant neither demonstrated his plea counsel was ineffective for permitting him to enter into the plea nor met any of the State v. Slater factors to withdraw the plea. 198 N.J. 145, 157-58 (2009).

The judge also concluded plea counsel was not ineffective for failing to move to suppress the evidence police seized from the apartment because defendant was arrested in the apartment and the evidence was seized incident to arrest. The judge also concluded plea counsel was not ineffective for failing to suppress the victim's statement on the day of the incident because "her statement recounting the assault to hospital staff would be admissible under the 'Statements for Purposes of a Medical Diagnosis or Treatment' exception to the hearsay requirement . . . . N.J.R.E. 803(c)(4)."

Defendant raises the following points on appeal:

> POINT I - THE [PCR] JUDGE ERRED IN HIS DETERMINATION THAT TRIAL COUNSEL PROVIDED EFFECTIVE ASSISTANCE SINCE COUNSEL FAILED TO SEEK DISMISSAL OF THE INDICTMENT BASED ON PROSECUTORIAL MISCONDUCT AND MOVE TO SUPPRESS EVIDENCE, HAD A CONFLICT OF INTEREST

AND DID NOT ADEQUATELY PREPARE FOR TRIAL.

    A.    TRIAL COUNSEL FAILED TO MAKE PRETRIAL MOTIONS TO SUPPRESS THE EVIDENCE AND TO DISMISS THE INDICTMENT BASED ON PROSECUTORIAL MISCONDUCT.

    B.    TRIAL COUNSEL FAILED TO ACKNOWLEDGE HIS CONFLICT OF INTEREST.

    C.    TRIAL COUNSEL FAILED TO PROPERLY PREPARE THE CASE.

POINT II – THE [PCR] JUDGE ERRED BY DENYING DEFENDANT'S CLAIM THAT HE IS ENTITLED TO WITHDRAW HIS GUILTY PLEA SINCE HE DID NOT ENTER INTO IT KNOWINGLY, INTELLIGENTLY OR VOLUNTARILY.

POINT III - DEFENDANT'S CONVICTIONS SHOULD BE VACATED AND THE INDICTMENT SHOULD HAVE BEEN DISMISSED SINCE THE STATE ENGAGED IN PROSECUTORIAL MISCONDUCT BY INTIMIDATING THE WITNESS, [N.P.], AND PRESENTING FALSE, MISLEADING AND INACCURATE INFORMATION TO THE GRAND JURY.

    A.    THE STATE INTIMIDATED THE WITNESS, [N.P.], COMMITTING PROSECUTORIAL MISCONDUCT AT THE GRAND JURY HEARING.

B. THE INDICTMENT SHOULD HAVE BEEN DISMISSED SINCE THE STATE ENGAGED IN PROSECUTORIAL MISCONDUCT BY PRESENTING FALSE, MISLEADING AND INACCURATE INFORMATION TO THE GRAND JURY.

POINT IV - THE [PCR] COURT ERRED BY DENYING DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF WITHOUT AFFORDING HIM AN EVIDENTIARY HEARING TO FULLY ADDRESS HIS CONTENTION THAT HE FAILED TO RECEIVE ADEQUATE LEGAL REPRESENTATION FROM TRIAL COUNSEL.

A PCR court need not grant an evidentiary hearing unless "a defendant has presented a prima facie [case] in support of post-conviction relief." State v. Marshall, 148 N.J. 89, 158 (1997) (alteration in original) (quoting State v. Preciose, 129 N.J. 451, 462 (1992)). "To establish such a prima facie case, the defendant must demonstrate a reasonable likelihood that his or her claim will ultimately succeed on the merits." Ibid. The court must view the facts "in the light most favorable to defendant." Ibid. (quoting Preciose, 129 N.J. at 462-63); accord R. 3:22-10(b). If the PCR court has not held an evidentiary hearing, we "conduct a de novo review . . . ." State v. Harris, 181 N.J. 391, 421 (2004).

To establish ineffective assistance of counsel, defendant must satisfy a two-prong test:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

[Strickland v. Washington, 466 U.S. 668, 687 (1984); State v. Fritz, 105 N.J. 42, 52 (1987) (quoting Strickland, 466 U.S. at 687).]

Counsel's performance is evaluated with extreme deference, "requiring 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . .'" Fritz, 105 N.J. at 52 (alteration in original) (quoting Strickland, 466 U.S. at 688-89). "To rebut that strong presumption, a [defendant] must establish . . . trial counsel's actions did not equate to 'sound trial strategy.'" State v. Castagna, 187 N.J. 293, 314 (2006) (quoting Strickland, 466 U.S. at 689). "Mere dissatisfaction with a 'counsel's exercise of judgment' is insufficient to warrant overturning a conviction." State v. Nash, 212 N.J. 518, 542 (2013) (quoting State v. Echols, 199 N.J. 344, 358 (2009)).

To demonstrate prejudice, "'actual ineffectiveness' . . . must [generally] be proved . . . ." Fritz, 105 N.J. at 52 (quoting Strickland, 466 U.S. at 692-93). Defendant must show the existence of "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' . . . A reasonable probability is a probability sufficient to undermine confidence in the outcome." Ibid. (internal citation omitted) (quoting Strickland, 466 U.S. at 694). Indeed,

> [i]t is not enough for [a] defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding.
>
> [Strickland, 466 U.S. at 693 (citation omitted).]

In order to establish the Strickland prejudice prong to set aside a guilty plea based on ineffective assistance of counsel, a defendant must show "'there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pled guilty and would have insisted on going to trial.'" State v. DiFrisco, 137 N.J. 434, 457 (1994) (alteration in original) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). Moreover, "'a [defendant] must convince the court that a decision to reject the plea bargain'" and "insist on going to trial" would have

12

been "'rational under the circumstances.'" State v. Maldon, 422 N.J. Super. 475, 486 (App. Div. 2011) (quoting Padilla v. Kentucky, 559 U.S. 356, 372 (2010)). That determination should be "based on evidence, not speculation." Ibid.

We reject defendant's arguments that his counsel was ineffective for failing to file motions to suppress the evidence seized from the residence and the victim's statements on the day of the incident, failing to move to dismiss the indictment, and asserting there was a conflict of interest.[4] For the reasons expressed in Judge Sules' opinion, none of the aforementioned issues demonstrated "actual ineffectiveness" on plea counsel's part or a reasonable probability the outcome would have been different based on these claims.

The record lacks any evidence defendant was pressured into accepting the plea and his claim in this regard is a bald allegation. Defendant's testimony during the plea proceeding contradicts this assertion. Independent of his ineffective assistance claims, we agree with Judge Sules that defendant's assertions met none of the Slater factors. Indeed, defendant had no colorable

---

[4] Defendant asserted a second basis for a conflict of interest, namely, that the victim's father was "highly involved since he provided keys to the police for a search of the couple's apartment and drove his daughter to the hospital." Although the judge's conflict of interest analysis focused on the relationship of defense counsel's staff with the victim's family, the father's involvement was not a conflict of interest under the same rationale and because he concluded the warrantless search was valid as incident to arrest.

13

claim of innocence, his unsupported reasons for withdrawing the plea were refuted by his objective testimony at the plea hearing confirming it was voluntary, the plea was pursuant to a negotiated agreement, and defendant does not refute the withdrawal of the plea would prejudice the State. Our de novo review of the record convinces us there was no prima facie showing on the PCR claims raised, entitling defendant to an evidentiary hearing.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14